FILED

NOT FOR PUBLICATION

JUN 26 2014

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STELLAR J CORPORATION, a Texas corporation,<br><br>    Plaintiff-counter-defendant - Appellee,<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>    Counter-defendant - Appellee,<br><br> v.<br><br>SMITH & LOVELESS, INC., a Kansas corporation,<br><br>    Defendant-counter-claimant - Appellant,<br><br>CITY OF RAINIER, OREGON FOR THE USE AND BENEFIT OF SMITH & LOVELESS, INC.,<br><br>    Counter-claimant - Appellant. | No. 12-35780<br><br>D.C. No. 3:09-cv-00353-JE<br><br>MEMORANDUM[*] |

―――――――――――

  [*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted May 16, 2014
Portland, Oregon

Before: ALARCÓN, TASHIMA, and IKUTA, Circuit Judges.

Smith & Loveless, Inc. ("Smith") appeals from the district court's order granting Stellar J Corporation ("Stellar") and Travelers Casualty and Surety Company of America's ("Travelers") motion for partial summary judgment dismissing Smith's breach of contract counterclaims with prejudice. Before this Court, Smith contends that an unlicensed contractor can file a counterclaim and recover damages pursuant to Or. Rev. Stat. § 701.131(1) (2008), even though that statute barred unlicensed contractors from filing a complaint for breach of contract.

We affirm the judgment because we conclude that Or. Rev. Stat. § 701.131(1) (2008), when properly construed, precluded an unlicenced contractor from recovering damages whether the contractor filed a cause of action in a complaint or in a counterclaim.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

**I**

Prior to being amended in 2007, Or. Rev. Stat. § 701.131(1)'s predecessor, former Or. Rev. Stat. § 701.065(1), read in pertinent part:

> (1) Except as provided in subsection (2) of this section, a contractor may not perfect a claim of a construction lien, or commence a claim with the Construction Contractors Board, in arbitration or in any court of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license issued by the board:
>
> (a) At the time the contractor bid or entered into the contract for performance of the work; and
>
> (b) Continuously while performing the work for which compensation is sought.

Or. Rev. Stat. § 701.065(1) (2005).

Smith filed its counterclaims on April 10, 2009. As amended in 2007, and effective as of January 1, 2008, Or. Rev. Stat. § 701.131(1) (2008) provided as follows:

> (1) Except as provided in subsection (2) of this section, a contractor may not perfect a construction lien, file a complaint with the Construction Contractors Board or commence an arbitration or a *court action* for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter unless the contractor had a valid license issued by the board:
>
> (a) at the time the contractor bid or entered into the contract for performance of the work; and

3

(b) Continuously while performing the work for which compensation is sought.

Or. Rev. Stat. § 701.131(1) (2008) (emphasis added); *see also* Or. Laws 2007, ch. 793, § 6.

The parties do not dispute that the Oregon Legislature amended the statute at the request of Oregon's Construction Contractors Board ("CCB" or "Board") or that the CCB sought to replace the term "claim" so as to alleviate confusion that the statute related to filing an insurance claim, instead of a lawsuit or a counterclaim, regarding construction work.

Smith maintains that, because Or. Rev. Stat. § 701.131(1) (2008) only prohibited a contractor from "commenc[ing] . . . a court action," it was not barred from filing its counterclaims. The only authority cited by Smith in support of its contention that Or. Rev. Stat. § 701.131(1) (2008) did not bar an unlicensed contractor from filing a cause of action or a counterclaim for breach of contract is dictum in a footnote in *Pincetich v. Nolan*, 285 P.3d 759 (Or. Ct. App. 2012).

In *Pincetich*, the Oregon Court of Appeals held that Or. Rev. Stat. § 701.131(1) barred an unlicenced contractor from prevailing in an action the contractor file for compensation for work pursuant to a construction contract. *Id.* at 760, 762. In a footnote discussing the scope of Or. Rev. Stat. § 701.131(1), the

court in *Pincetich* opined in dictum that the term "court action" in Or. Rev. Stat. § 701.131(1) "permit[s] an unlicensed contractor to file any counterclaim or third-party claim, even if that claim seeks compensation for construction work, provided the contractor does not commence a court action for compensation." *Id.* at 762 n.3. Smith contends that this footnote is "dispositive" of this case.

This Court is "not bound by dicta of state appellate courts." *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 983 (9th Cir. 1999) (citation omitted). We have also held, however, that "[i]n cases where the highest appellate court of the state has not spoken, well-considered dicta should not be ignored." *Columbia Grain, Inc. v. Or. Ins. Guar. Ass'n*, 22 F.3d 928, 932 (9th Cir. 1994) (internal quotation marks and citation omitted). The *Pincetich* footnote is not "well-considered" dictum that this Court is bound to follow. The dispositive issue in *Pincetich* was whether an exception to Or. Rev. Stat. § 701.131(1) applied to an unlicenced contractor that filed suit. *Pincetich*, 285 P.3d at 760–61.

Because the *Pincetich* footnote is not controlling in deciding the question raised in this appeal, and in the absence of a dispositive ruling by the Oregon Supreme Court, we must construe the intent of the Oregon legislature in drafting Or. Rev. Stat. § 701.131(1) (2008). To interpret Oregon law, this Court has looked to the Oregon Supreme Court's decision in *State v. Gaines*, 206 P.3d 1042 (Or.

2009). *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010). In *Gaines*, the Oregon Supreme Court restated its "methodology for interpreting a statute" as follows:

> The first step remains an examination of text and context. But . . . we no longer will require an ambiguity in the text of a statute as a necessary predicate to the second step—consideration of pertinent legislative history that a party may proffer. Instead, a party is free to proffer legislative history to the court, and the court will consult it after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis. However, the extent of the court's consideration of that history, and the evaluative weight that the court gives it, is for the court to determine. The third, and final step, of the interpretative methodology is unchanged. If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty.

*Gaines*, 206 P.3d at 1050-51 (discussing Or. Rev. Stat. § 174.020) (citations omitted).

In general, commencing an "action" refers to filing suit. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (West 2014) (defining "action," in part, as "[a] civil or criminal judicial proceeding"). For example, in *Abbott v. Baldwin*, 36 P.3d 516 (Or. Ct. App. 2001), in the context of a request for post-conviction relief, an Oregon intermediate appellate court explained that "[t]he term 'action' . . . has a well-established legal meaning," which "is a discrete judicial proceeding involving

a demand for relief that must be independently commenced and adjudicated." *Id.* at 521–22 (citing Or. R. Civ. P. 1(A), 3, 70; BLACK'S LAW DICTIONARY 29 (6th ed. 1990)). The court in *Abbott* also explained that "action" "has essentially the same meaning as the term 'case.'" *Id.* at 522 (citing *State v. Cunningham*, 985 P.2d 827, 831 (Or. Ct. App. 1999); Or. R. Civ. P. 1(A)). As the court in *Abbott* acknowledged, an Oregon intermediate appellate court in *State v. Cunningham* stated "[e]ven within the legal context . . . the meaning of the word ['case'] is not narrow" and can be defined as:

> "A general term for an action, cause, suit or controversy, at law or in equity; a question contested before a court of justice; an aggregate of facts which furnishes occasion for the exercise of the jurisdiction of a court of justice. A judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected, or wrongs are prevented or redressed; *any* proceeding judicial in its nature."

*Cunningham*, 985 P.2d at 831 (quoting BLACK'S LAW DICTIONARY 195 (5th ed. 1979)) (emphasis in original). Accordingly, both *Abbott* and *Cunningham* indicate that the term "action," which "has essentially the same meaning as the term 'case,'" refers to "'any proceeding judicial in its nature.'" *Abbott*, 36 P.3d at 522; *Cunningham*, 985 P.2d at 831.

Or. Rev. Stat. § 701.131(1) (2008) applies to a "court action for compensation for the performance of any work or for the breach of any contract for

work that is subject to this chapter." Or. Rev. Stat. § 701.131(1) (2008). This language indicates that the statutory term "court action" means a "claim" or "cause of action" because application of the statute turns on a party's assertion of a right to payment for work subject to Chapter 701, not the form of the filing. *See, e.g.*, *Ram Technical Servs., Inc. v. Koresko*, 208 P.3d 950, 961 (Or. 2009) (stating "claim" is defined as "'[t]he aggregate of operative facts giving rise to a right enforceable by a court.'" (quoting BLACK'S LAW DICTIONARY 264 (2004)); BLACK'S LAW DICTIONARY (9th ed. 2009) (West 2014) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person").

Turning to general maxims of statutory construction, "courts must refuse to give literal application to language when to do so would produce an absurd or unreasonable result." *McKean-Coffman v. Emp't Div.*, 824 P.2d 410, 414 (Or. 1992). The purpose of Or. Rev. Stat. § 701.131(1) was "to deter unlicensed contractors from performing construction work by denying them the ability to pursue *claims* for compensation for their work." *Pincetich*, 285 P.3d at 762 (emphasis added). In light of this purpose, to interpret the words "commence . . . a court action" in Or. Rev. Stat. § 701.131(1) (2008) to exclude counterclaims filed by contractors that are unlicenced is unreasonable and contrary to the intent of the

8

legislature to bar unlicensed contractors from recovering compensation for their work. Such an interpretation would permit unlicenced contractors to recover damages when they are sued, but not when they file a complaint for breach of contract. There is no principled basis for such an irrational interpretation of Or. Rev. Stat. § 701.131(1) (2008).

After *Pincetich* was published, the CCB informed the Oregon legislature that the use of "court action" in Or. Rev. Stat. § 701.131(1) (2008) had had an "unintended consequence." In pertinent part, the statute was amended to make it clear that an unlicenced contractor could not "commence . . . a claim in a court of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license." *See* Or. Rev. Stat. § 701.131(1) (2014); Or. Laws 2013, ch. 251, § 5.

We are persuaded that to interpret Or. Rev. Stat. § 701.131(1) (2008) to bar an unlicensed contractor from filing a claim for breach of contract, but to permit one to recover in a counterclaim, would be an absurd and unreasonable result, clearly contrary to legislative intent. The district court did not err in dismissing Smiht's counterclaims with prejudice.

**II**

9

Smith also contends that it is excepted from Or. Rev. Stat. § 701.131(1) (2008), pursuant to Or. Rev. Stat. § 701.131(2)(a) (2008). But Smith was not licensed by the CCB when it filed its counterclaims on April 10, 2009. There is no question that Smith cannot meet the requirement in Or. Rev. Stat. § 701.131(2)(a)(B) (2008) that "[a]t the time the contractor . . . commenced any proceeding subject to the provisions of subsection (1) . . . the contractor was licensed by the board." Or. Rev. Stat. § 701.131(2)(a)(B) (2008).

### III

Additionally, Smith contends that it was not a "contractor," pursuant to Or. Rev. Stat. § 701.005(5)(a) (2008), because the "Biological Wastewater Treatment Unit and Aeration Diffuser System" (collectively, the "Treatment Unit") it sold to and contracted to installed for Stellar "is removable" and, therefore, not "attached to real estate." Smith's unsupported generalization that the Treatment Unit is removable does not alter the fact, as admitted by Smith, that the Treatment Unit was attached to the City of Rainier's wastewater treatment facility. The district court did not err in concluding that Smith was a contractor. *See* Or. Rev. Stat. § 701.005(5)(a) (2008) (defining "contractor" by whether person's work is "attached to real estate")*; L.H. Morris Elec., Inc. v. Hyundai Semiconductor Am.*,

10

66 P.3d 509, 512 (Or. Ct. App. 2003) (holding question of person's status as a "contractor" depends on whether work in question was attached to real estate).

**IV**

Smith also asserts that the dismissal of its counterclaims should have been without prejudice. Smith maintains that, in order to file its counterclaims pursuant to Rules 12 and 13 of the Federal Rules of Civil Procedure, it was not able timely to avail itself of the exception in Or. Rev. Stat. § 701.131(2)(a) (2008). Smith, though, has not provided this Court with any authority that Rules 12 and 13 may trump Oregon's substantive law.

**V**

Smith also maintains that Stellar is equitably estopped from raising Or. Rev. Stat. § 701.131(1) (2008) because it was on notice that Smith did not have a license. The minimum requirements for the application of equitable estoppel are not satisfied here. Smith has not shown the existence of evidence from which a reasonable trier of fact could conclude that Stellar falsely represented to Smith that it did not need a license, that Stellar did so with the intention that Smith would not act to obtain license, and that Smith was induced not to do so. *See Day v. Advanced M&D Sales, Inc.*, 86 P.3d 678, 682 (Or. 2004) (stating elements of equitable estoppel).

11

## VI

Lastly, Smith argues that it should be allowed to sever and proceed with its counterclaims to the extent they involve the manufacture and sale, but not installation, of equipment, based on a "severability clause" in the parties' subcontract. The work in the subcontract's "scope of work" provision, however, constituted work as a "contractor." *See* Or. Rev. Stat. § 701.005(5)(a) (2008) (defining "contractor"). Additionally, contractors may not avoid Or. Rev. Stat. § 701.131(1) by defining covered "work" in a "patchwork, pick-and-choose fashion." *Parthenon Constr. & Design, Inc. v. Neuman*, 999 P.2d 1169, 1173–74 (Or. Ct. App. 2000).

**AFFIRMED**.

*Stellar J v. Smith & Loveless*, No.12-35780

IKUTA, J., dissenting:

The Oregon Supreme Court has given us our marching orders. "When the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." *State v. Gaines*, 346 Or. 160, 173 (2009). The Oregon Supreme Court expects the state legislature to know this rule, and quoted (with approval) Representative Max William's statement that "We still have to mean what we say when we say it. We can't say, black and then * * * all agree that black meant white. That's not going to work." *Id.* at 173 n.10.

Here, the text of section 701.131(1), as it existed in 2008, prohibits an unlicensed contractor from commencing "*a court action* for compensation for the performance of any work or for the breach of any contract for work that is subject to" the contractor licensing law. *See* Or. Rev. Stat. § 701.131(1) (2008) (emphasis added). Oregon state courts define the term "action" to mean the "judicial proceeding involving a demand for relief that must be independently commenced and adjudicated," *Abbott v. Baldwin*, 178 Or. App. 289, 298 (2001), while the term "claim" merely refers to "[t]he aggregate of operative facts giving rise to a right enforceable by a court," *Ram Technical Servs., Inc. v. Koresko*, 346 Or. 215, 236

(2009).[1]  In other words, the plain language of the 2008 statute prohibits unlicensed contractors from bringing independent court actions, but not from bringing claims or counterclaims.

The 2008 statute amended an earlier version of § 701.131(1) that was broader in scope:  it prohibited an unlicensed contractor from raising "a claim" in state court.  Or. Rev. Stat. § 701.065(1) (2006); *see also Splinters, Inc.v. Andersen/Weitz*, 192 Or. App. 632, 639–41 (2004) (applying statute to unlicensed contractor's counterclaims).  There can be no doubt that the 2008 amendments changed the law when it changed the word "claim" to "court action."  As a state appellate court succinctly stated:

> [b]y changing the language of the claims bar to prohibit an unlicensed contractor from commencing a court action, rather than a claim, the amendments permit an unlicensed contractor to file any counterclaim or third-party claim, even if that claim seeks compensation for construction work, provided the contractor does not commence a court action for compensation.

*Pincetich v. Nolan*, 252 Or. App. 42, 48 n.3 (2012).  In other words, "the amendments had a substantive effect."  *Id.*  The state legislature apparently agreed.

---

[1] *Abbott* also defines the term "action" to mean the same as the term "case," 178 Or. App. at 298, which likewise refers to the entire proceeding, not an individual claim or counterclaim, *see State v. Cunningham*, 161 Or. App. 345, 352 (1999).

2

In 2013, the legislature once again amended § 701.131 to return it to its original broader scope. Under the 2013 amendments, the "court action" language is gone, and the new version of § 701.131 now prohibits an unlicensed contractor from commencing a "claim" for contractor work. Or. Rev. Stat. § 701.131(1) (2013).

In sum, while the 2008 statute was in effect, unlicensed contractors could bring counterclaims. The majority ignores the plain language of the 2008 statute by giving effect to what the majority thinks the legislature probably meant. Op. at 8–12. Under Oregon law, "[t]hat's not going to work." *Gaines*, 346 Or. at 173 n.10. Though the legislature might have meant to prohibit "causes of action," that is not what it said. Because the 2008 version of Or. Rev. Stat. § 701.131(1) does not apply to counterclaims, I would reverse and remand for further proceedings. There is nothing either absurd nor unreasonable about giving effect to the language the state legislature enacted.

For these reasons, I respectfully dissent.